18
GREGORY S. POWELL, State Bar No. 182199
Assistant United States Trustee
JASON BLUMBERG, State Bar No. 330150
Trial Attorney
UNITED STATES DEPARTMENT OF JUSTICE
Office of the United States Trustee
2500 Tulare Street, Suite 1401
Fresno, California 93721
Telephone: (559) 487-5002
Facsimile: (559) 487-5030
E-mail: jason.blumberg@usdoj.gov

Attorneys for TRACY HOPE DAVIS
United States Trustee for Region 17

# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re: | CASE NO.: 21-12598-B-7 |
| YINGCHUN LOU, | |
|       Debtor. | |
| _____/ | |
| TRACY HOPE DAVIS, UNITED STATES TRUSTEE, | |
|       Plaintiff, | ADV. PROC. NO.: |
| v. | |
| YINGCHUN LOU, | |
|       Defendant. | |
| _____/ | |

**COMPLAINT OBJECTING TO DEBTOR'S DISCHARGE**

1

The Plaintiff, Tracy Hope Davis, the United States Trustee for Region 17 (the "Plaintiff"), by and through the undersigned attorney, avers and alleges as follows:

### JURISDICTION AND VENUE

1. This adversary proceeding is brought in connection with Defendant YINGCHUN LOU's above-captioned case under Chapter 7 of the Bankruptcy Code, Case No. 21-12598-B-7 (the "Underlying Case").

2. The Underlying Case was filed on November 9, 2021 (the "Petition Date") and is now pending before the above-entitled Court.

3. The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334 and 11 U.S.C. § 727. This adversary proceeding is a "core" proceeding pursuant to 28 U.S.C. § 157(b)(2)(J). Plaintiff consents to entry of final orders and judgment by the Court.

4. Venue in this District is proper pursuant to 28 U.S.C. § 1409(a).

5. Plaintiff has standing to object to the granting of a discharge pursuant to 11 U.S.C. § 727(c)(1).

6. By order dated March 17, 2022 (ECF No. 59), the Court extended the Plaintiff's deadline to object to the Defendant's discharge through March 31, 2022.

### FACTUAL ALLEGATIONS

7. On the Petition Date, the Defendant filed, or caused to be filed, her petition in the Underlying Case (ECF No. 1) (the "Petition").

8. The Defendant executed the Petition under penalty of perjury, declaring the information provided therein to be true and correct.

9. On the Petition (at § 5), the Defendant stated that she resides at 4611 Kaytlain Ave., Bakersfield, California 93313 (the "Kaytlain Property").

10. On the Petition Date, Jeffrey M. Vetter was appointed as the Chapter 7 trustee in the Underlying Case.

11. The Defendant's counsel of record in the Underlying Case is Sam X. J. Wu, Esq.

**The Defendant's Former Spouse: Bao Xue**

12. Upon information and belief, the Defendant and Bao Xue were married in Shandong, China on or about December 4, 2009.

13. Upon information and belief, on or about July 14, 2021, the Defendant and Bao Xue filed a joint Petition for Divorce in the District Court for Clark County, Nevada (Case No. D-21-630798-Z) (the "Family Court").

14. Upon information and belief, on or about August 19, 2021, the Family Court entered a decree of divorce with respect to the Defendant and Bao Xue.

**YCL Enterprises Inc.**

15. On or about March 16, 2018, YCL Enterprises Inc. ("YCL") was incorporated in the State of California.

16. Upon information and belief, Bao Xue is the Chief Executive Officer of YCL.

17. Upon information and belief, Bao Xue owns 99% of the equity of YCL.

18. Upon information and belief, George Hsu owns 1% of the equity of YCL.

19. According to a Statement of Information filed with the California of Secretary of State, the Defendant was the Chief Financial Officer of YCL on April 10, 2021.

20. Upon information and belief, YCL was engaged in the construction business.

21. Upon information and belief, YCL ceased operating prior to the Petition Date.

22. Upon information and belief, in her capacity as CFO of YCL, the Defendant signed equipment purchase contracts on YCL's behalf including as follows:

    a. an installment sale contract with Quinn Company on or about January 30, 2020 for a Genie GS-3369RT Scissor Lift, with the serial number GS6913-1965; and

    b. an installment sale contract with Quinn Company on or about February 10, 2020 for (i) a Caterpillar 430F Backhoe Loader with the serial number RDF00667, (ii) a Caterpillar TL642 Telehandler with the serial number TBK00224, and (iii) a Genie GS3268DF Lift with the serial number GS6807-47766.

23. Upon information and belief, in January and February of 2020, Quinn Company assigned its rights and interests under the contracts identified in Paragraph 22 hereof to Caterpillar Financial Services Corporation.

24. Upon information and belief, in her capacity as CFO of YCL, the Defendant signed loan and security agreements on YCL's behalf including as follows:

    a. a loan and security agreement with BMO Harris Bank, N.A. ("BMO") on or about December 6, 2019. The collateral under this agreement was (i) a 2018 Ford F750 with the serial number 1FDXF7DE1JDF05000, and (ii) a 2019 Southern California Dump Truck with the serial number 139402019.

    b. a master loan and security agreement dated April 23, 2020 with Wells Fargo Vendor Financial Services, LLC ("Wells Fargo"). The equipment financed pursuant to this agreement was (i) a 2020 Bobcat S550 T4 Skid Steer Loader with the serial number AHGM20264, and (ii) a 2019 Bobcat 15H Auger with the serial number A90L03461.

25. Upon information and belief, on or about December 6, 2019, the Defendant signed a certain Continuing Guaranty of YCL's obligations to BMO. In this guaranty, the Defendant represented that she was an "owner of or in" YCL.

26. Upon information and belief, on or about April 23, 2020, the Defendant signed a certain Unlimited Personal Guaranty in connection with YCL's obligations to Wells Fargo under the master loan and security agreement dated April 23, 2020.

27. On October 13, 2021, YCL filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code in the Central District of California (Case No. 21-17917) (the "YCL Bankruptcy Case").

28. Bao Xue signed YCL's bankruptcy petition, schedules and statement of financial affairs in the YCL Bankruptcy Case as YCL's CEO.

29. Sam X. J. Wu, Esq. signed YCL's bankruptcy petition in the YCL Bankruptcy Case as YCL's attorney. As discussed above, Mr. Wu is the Defendant's counsel of record in the Underlying Case.

30. On its Schedule A/B (ECF No. 1 in the YCL Bankruptcy Case), YCL stated that it had no assets.

31. In response to Question 10 of the statement of financial affairs (ECF No. 1 in the YCL Bankruptcy Case), YCL stated that the following equipment had been stolen between June 15, 2021 and July 29, 2021: (i) an "S550 Bobcat Skid Steer with loan"; (ii) a "Big Tex 30ft flat beo bed tandem axel trailer"; (iii) a "yellow caterpillar tractor with loan"; (iv) a "2018 white Ford F-750 dump truck"; and (v) an "S550 Bobcat Skid Steer Loader."

32. Previously, upon information and belief, on or about July 24, 2021, Bao Xue reported to law enforcement that several items of equipment had been stolen from 28749 N. County Road 3250, Garvin County, Oklahoma (the "Oklahoma Farm"). The equipment reported stolen included: (i) the Caterpillar 430F Backhoe Loader with the serial number

RDF00667; (ii) the Genie GS3268DF Lift with the serial number GS6807-47766; and (iii) the 2018 Ford F-750 with the serial number 1FDXF7DE1JDF05000.

**The Oklahoma Marijuana Business**

33. Upon information and belief, the Defendant and Bao Xue operated a marijuana grow farm on the Oklahoma Farm during 2021.

34. Upon information and belief, the Defendant managed the technicians and other workers responsible for growing marijuana plants at the Oklahoma Farm.

35. Upon information and belief, the Defendant and Bao Xue used YCL's equipment at the Oklahoma Farm to aid in the growing of marijuana plants there.

36. Upon information and belief, between approximately March 2021 and May 2021, the Defendant and Bao Xue received at least $80,000 as down payments from prospective purchasers of marijuana plants grown on the Oklahoma Farm.

37. Upon information and belief, the Defendant and Bao Xue ceased growing marijuana plants on the Oklahoma Farm prior to the Petition Date.

**The Defendant's Schedules and Statements in the Underlying Case**

38. On the Petition Date, the Defendant filed, or caused to be filed, her schedules and statements in the Underlying Case (ECF No. 1), including Schedule A/B, Schedule D, Schedule E/F, Schedule I and the Statement of Financial Affairs.

39. The Defendant signed her schedules (ECF No. 1) under penalty of perjury, declaring that the information therein was true and correct.

40. The Defendant signed her Statement of Financial Affairs (ECF No. 1) under penalty of perjury, declaring that the information therein was true and correct.

41. On Schedule A/B (at item 1.1), the Defendant stated that she owned the Kaytlain Property, which she valued at $292,000.

42. Upon information and belief, the Defendant acquired the Kaytlain Property on or about October 28, 2021.

43. On Schedule A/B (at item 17), the Defendant stated that she owned interests in bank accounts at "Chase," "Bank of America," and "Wells Fargo."

44. On Schedule A/B (at item 19), the Defendant stated that she did not own any interests in "incorporated and unincorporated businesses, including an interest in an LLC, partnership, and joint venture."

45. On Schedule D, the Defendant listed a secured claim in favor of Equity Financial Services, Inc. in the amount of $180,000. According to Schedule D, the collateral for this claim is the Kaytlain Property.

46. On Schedule E/F, the Defendant listed unsecured claims totaling $477,919.17, including:

   a. a claim in favor of BMO in the amount of $40,000 for "2018 White Ford F-750 dump truck (stolen with police report)."

   b. a claim in favor of Caterpillar Financial Services for $138,199.04 for, inter alia, "1 Caterpillar Model 430F Backhoe Loader Serial # RDF00667 (stolen with police report) …."

   c. a claim in favor of Wells Fargo for $25,000 for "S550 Bobcat Skid Steer Loader (stolen with police report)."

   d. a claim in favor of Chang Qin Jiang for $8,706 for "wage claim with Oklahoma Department of Labor."

   e. a claim in favor of Chao Wang for $2,550 for "wage claim with Oklahoma Department of Labor."

   f. a claim in favor of Lu Bo for $1,440 for "wage claim with Oklahoma Department of Labor."

47. On Schedule I, the Defendant stated that:

   a. she was not employed (at line 1).

   b. she received $4,550,82 per month as "Selling proceeds from old house" (at line 8h).

   c. she did not have any sources of income other than the "Selling proceeds from old house" income disclosed on line 8h.

   d. her total income is $4,550.82 per month (at lines 10, 12).

48. In response to Question 2 of the Statement of Financial Affairs, the Defendant stated that she had not lived anywhere other than where she now lives during the previous 3 years.

49. In response to Question 4 of the Statement of Financial Affairs, the Defendant stated that (i) she had no gross income from employment or from operating a business during the period of January 1, 2021 through the Petition Date, (ii) she had gross income of $6,800 from "[w]ages, commissions, bonuses, tips" during 2020, and (iii) she had gross income of $13,000 from "[w]ages, commissions, bonuses, tips" during 2019.

50. Upon information and belief, on Schedule C of the Defendant's 2020 joint Federal income tax return with Bao Xue, the Defendant stated that she had gross income of $6,800 from operating a business. The Defendant did not disclose any wage income on the tax return.

51. In response to Question 5 of the Statement of Financial Affairs, the Defendant disclosed other income of $2,400 for "Government Support for COVID19."

52. In response to Question 9 of the Statement of Financial Affairs, the Defendant disclosed a pending breach of contract action involving Caterpillar Financial Services

Corporation and YCL. The Defendant did not disclose any other legal actions in response to Question 9 of the Statement of Financial Affairs.

53. In response to Question 15 of the Statement of Financial Affairs, the Defendant stated that the following equipment had been stolen between June 15, 2021 and July 29, 2021: (i) an "S550 Bobcat Skid Steer with loan"; (ii) a "Big Tex 30ft flat beo bed tandem axel trailer"; (iii) a "yellow caterpillar tractor with loan"; (iv) a "2018 white Ford F-750 dump truck"; and (v) an "S550 Bobcat Skid Steer Loader."

54. In response to Question 18 of the Statement of Financial Affairs, the Defendant stated that she had sold the single family house located at 14616 Crossing Trail, Victorville, California (the "Victorville Property") for $300,000 on August 11, 2021.

55. In response to Question 18 of the Statement of Financial Affairs, the Defendant further stated that the net proceeds from the sale of the Victorville Property were $156,857.26.

56. In response to Question 18 of the Statement of Financial Affairs, the Defendant further stated that the net proceeds from the sale of the Victorville Property were used as follows: (i) $126,747.57 for the down payment for the Kaytlain Property; (ii) $15,000 for living expenses; (iii) $8,000 for "business and personal bankruptcy attorney's fees and costs"; (iv) $5,000 for moving and repairs; and (v) $2,000 for a tax attorney.

57. Question 27 of the Statement of Financial Affairs asked whether the Defendant had any specified connections to any businesses within 4 years prior to the Petition Date, including holding an officer position in a corporation, owning at least 5% of the voting or equity securities of a corporation, being a member of a limited liability company, being a partner in a partnership, or being a sole proprietor.

58. In response to Question 27 of the SOFA, the Defendant did not disclose any specific connections to any businesses. Instead, the Defendant stated "No. None of the above applies."

**The Defendant's Testimony at the 341 Meeting**

59. The first date set for the meeting of creditors under 11 U.S.C. § 341(a) in the Underlying Case (the "341 Meeting") was December 3, 2021. The 341 Meeting was continued to January 4, 2022 and concluded January 18, 2022.

60. The Defendant appeared and testified under oath with the aid of an interpreter at the 341 Meeting on December 3, 2021. Among other things, the Defendant testified that:

   a. she had read and signed the petition, schedules and statements.

   b. the petition, schedules and statements are true and correct and there were no errors or omissions that she wished to identify.

   c. she is currently unemployed.

   d. she is divorced.

   e. her divorce was "approved" in August 2021.

   f. her former spouse's name is Bao Xue.

   g. she has never had an interest in YCL.

   h. she was CFO of YCL from April 2019 to June 2021.

   i. YCL was a renovation and construction company.

   j. YCL was located in San Bernardino.

   k. she purchased the Kaytlain Property for $290,000 in "October this year."

   l. YCL is not currently operating and it has "applied for bankruptcy."

   m. she owes wage claims because her former spouse rented a farm in Oklahoma to grow marijuana and she was there to help him plant marijuana, and she was responsible for collecting money from customers.

      n. she has never earned any income from the marijuana farm in Oklahoma.

61. The Defendant appeared and testified under oath with the aid of an interpreter at the 341 Meeting on January 4, 2022. Among other things, the Defendant testified that:

      a. her former husband leased the Oklahoma Farm from a company called Olivia Green LLC.

      b. she and her former husband received $80,000 to $90,000 between March 2021 and May 2021 as down payments from potential purchasers of the marijuana plants grown on the Oklahoma Farm.

      c. the down payments were deposited in the Defendant's joint account at Wells Fargo.

      d. the Oklahoma Farm "is not in operation, and there is nobody there …."

      e. she "manage[d] the growing of the plant, and the actual process of growing was done by the technicians and the workers…. I was only managing technicians and the workers. I managed their working hours and managed their salary payment and their boarding and their food."

      f. she was first present on the Oklahoma Farm in March of 2021 and she was last there in June of 2021.

      g. she served as CFO of YCL from April 2019 to May 2021.

      h. she had applied for a loan in connection with her purchase of the Kaytlain Property and she now makes "monthly" payments to her loan company. The Defendant further testified that she had told the loan company she was earning income at the time of her loan application.

      i. YCL was the owner of the stolen equipment listed in response to Question 15 of the Statement of Financial Affairs "but I was the guarantor." The Defendant further testified that the stolen equipment was located at the Oklahoma Farm when it was stolen. The Defendant further testified that the stolen equipment had been used in aid of growing marijuana plants on the Oklahoma Farm. The Defendant further testified that her "ex-husband suspected a certain person [of the theft], and I do not remember the name of that certain person."

      j. after she left the Oklahoma Farm in June 2021, "the equipment was stolen, and also … they had difficulty of recruiting the workers because of COVID-19, and so therefore it stopped."

  k. she had used a portion of the net sale proceeds from the Victorville Property to pay YCL's bankruptcy attorney.

  l. she sold a massage business for $35,000 in 2020.

**Pre-Petition Deposits into the Defendant's Bank Accounts**

62. Account statements for the Defendant's Bank of America account ending with the digits 5466 ("BOA 5466") reflect deposits and other additions in the approximate amount of $141,559.46 for the period of February 4, 2021 to November 4, 2021.

63. Account statements for the Defendant's JPMorgan Chase Bank account ending with the digits 0299 ("Chase 0299") reflect deposits and other additions in the approximate amount of $236,886.05 for the period of February 25, 2021 to October 26, 2021. Upon information and belief, this amount includes a wire transfer of $156,857.26 for the sale of the Victorville Property. Thus, deposits and other additions to Chase 0299 that were unrelated to the sale of the Victorville Property total approximately $80,028.79 ($236,886.05 minus $156,857.26).

64. Account statements for the Defendant's joint account with Bao Xue at Wells Fargo ending with the digits 8050 ("WF 8050" and together with BOA 5466 and Chase 0299, the "Bank Accounts") reflect deposits and other additions in the approximate amount of $81,572.26 for the period of March 6, 2021 to November 5, 2021.

65. In sum, between February 4, 2021 and the Petition Date, deposits and other additions to the Defendant's Bank Accounts totaled approximately $460,017.77.

66. In sum, between February 4, 2021 and the Petition Date, deposits and other additions to the Defendant's Bank Accounts unrelated to the sale of the Victorville Property

totaled approximately $303,160.51, or approximately $33,684.50 per month ($303,160.51 divided by 9 months).

**Pre-Petition Withdrawals from the Defendant's Bank Accounts**

67. Withdrawals and other subtractions from BOA 5466 between February 4, 2021 and November 4, 2021 include the following withdrawals and other subtractions totaling $85,651.64:

   a. a cash withdrawal in the amount of $9,000 on February 16, 2021.

   b. a wire transfer in the amount of $40,830 for the benefit of Shandong Fuma AG and Tech on March 8, 2021.

   c. a Zelle transfer in the amount of $3,000 for the benefit of "Kun" on March 31, 2021.

   d. a payment in the amount of $3,567.53 to "American Gen Lif" on April 1, 2021.

   e. a Zelle transfer in the amount of $3,000 for the benefit of "Zhiewi" on April 2, 2021.

   f. check no. 194 in the amount of $5,500 to Annie Yeh on April 19, 2021.

   g. an online banking payment to "CRD 1175" in the amount of $3,458.11 on April 21, 2021.

   h. an online banking payment to "CRD 1175" in the amount of $3,296 on May 20, 2021.

   i. a Zelle transfer in the amount of $3,000 for the benefit of "BAO" on June 4, 2021.

   j. check no. 198 in the amount of $5,000 to GTR Management Group on June 24, 2021.

   k. check no. 199 in the amount of $3,000 to Hong Kong Liv on June 28, 2021.

   l. a Zelle transfer in the amount of $3,000 for the benefit of "BAO" on June 28 2021.

13

68. Withdrawals and other subtractions from Chase 0299 between February 25, 2021 and October 26, 2021 include the following withdrawals and other subtractions totaling $157,702.57:

   a. check no. 181 in the amount of $4,000 to an unknown payee on March 3, 2021.

   b. a withdrawal in the amount of $5,000 on March 22, 2021.

   c. a withdrawal in the amount of $4,500 on April 1, 2021.

   d. check no. 153 in the amount of $4,000 to an unknown payee on April 19, 2021.

   e. a withdrawal in the amount of $4,500 on June 1, 2021.

   f. check no. 107 in the amount of $4,455 to an unknown payee on June 22, 2021.

   g. check no. 108 in the amount of $4,000 to an unknown payee on June 24, 2021.

   h. check no. 111 in the amount of $3,000 to an unknown payee on June 28, 2021.

   i. a wire to Chicago Title Company in the amount of $124,247.57 on October 5, 2021.

69. Withdrawals and other subtractions from WF 8050 between March 6, 2021 and November 5, 2021 include the following withdrawals and other subtractions totaling $15,000:

   a. a Wells Fargo check card payment in the amount of $3,000 on March 24, 2021.

   b. an on-line transfer in the amount of $3,000 to the account of BTG Resources Inc. (ending with the digits 0957) on April 23, 2021.

   c. a Wells Fargo check card payment in the amount of $3,000 on April 26, 2021.

   d. a Wells Fargo check card payment in the amount of $3,000 on May 24, 2021.

e. check no. 119 in the amount of $3,000 to an unknown payee on June 28, 2021.

**The Uniform Residential Loan Application**

70. Upon information and belief, on October 14, 2021, the Defendant signed a Uniform Residential Loan Application with respect to the purchase of the Kaytlain Property (the "Loan Application").

71. By signing the Loan Application, the Defendant certified that the information in the Loan Application "is true and correct as of the date set forth opposite [her signature]" and she acknowledged her "understanding that any intentional or negligent misrepresentation(s) of the information contained in this application may result in civil liability and/or criminal penalties."

72. On the Loan Application, the Defendant stated that she had previously resided at the Victorville Property.

73. Upon information and belief, the Defendant resided at the Victorville Property within three years of the Petition Date.

74. On the Loan Application, the Defendant stated that she had previously resided at 207 Misty Meadow Dr., Bakersfield, California (the "Misty Meadow Property").

75. Upon information and belief, the Defendant resided at the Misty Meadow Property within three years of the Petition Date.

76. On the Loan Application, the Debtor stated that her employer was CHL Equity LLC. The Debtor further stated that she had been "on this job" for two years. The Debtor further stated that her "Base Empl Income" was $8,500 per month.

**The Aztec Street Property**

77. Upon information and belief, on or about January 31, 2020, the Defendant acquired the real property commonly known as 14680 Aztec Street, Victorville, California (the "Aztec Street Property") from HBL Equity LLC ("HBL").

78. Upon information and belief, on or about March 23, 2020, the Defendant transferred the Aztec Street Property to HBL.

### FIRST CLAIM FOR RELIEF
### Denial of Discharge under 11 U.S.C. § 727(a)(4)(A)
### (False Oaths)

79. Plaintiff refers to and incorporates herein paragraphs 1 through 78 inclusive.

80. The Defendant knowingly and fraudulently made numerous false oaths or accounts in connection with the Underlying Case, including when she:

   a. failed to disclose that she previously resided at the Victorville Property and the Misty Meadow Property in response to Question 2 of the Statement of Financial Affairs.

   b. understated her gross income in response to Question 4 of the Statement of Financial Affairs, including by failing to disclose her gross income from the marijuana business on the Oklahoma Farm and her employment income from CHL Equity LLC.

   c. falsely stated in response to Question 4 of the Statement of Financial Affairs that her 2020 gross income was limited to "[w]ages, commissions, bonuses, tips" and did not include income from "[o]perating a business."

   d. failed to disclose her divorce proceeding in response to Question 9 of the Statement of Financial Affairs.

   e. failed to disclose her transfers of the Aztec Property and her massage business in response to Question 18 of the Statement of Financial Affairs.

   f. failed to disclose her interest in and connection to YCL, the marijuana business on the Oklahoma Farm, and her massage business in response to Question 27 of the Statement of Financial Affairs.

   g. falsely testified at the 341 Meeting that she had never had an interest in YCL.

    h. falsely testified at the 341 Meeting that she had never earned any income from the marijuana business in Oklahoma.

81. The Defendant's discharge should be denied pursuant to 11 U.S.C. § 727(a)(4)(A).

## SECOND CLAIM FOR RELIEF
**Denial of Discharge under 11 U.S.C. § 727(a)(5)**
**(Failure to Satisfactorily Explain Deficiency of Assets to Meet Liabilities)**

82. Plaintiff refers to and incorporates herein paragraphs 1 through 81 inclusive.

83. Between February 4, 2021 and the Petition Date, deposits and other additions to the Defendant's Bank Accounts unrelated to the sale of the Victorville Property totaled $303,160.51, or approximately $33,684.50 per month ($303,160.51 divided by 9 months).

84. Upon information and belief, on October 14, 2021, the Defendant signed the Loan Application with respect to the purchase of the Kaytlain Property.

85. On the Loan Application, the Defendant stated that she was employed by CHL Equity, LLC and earning $8,500 per month.

86. On or about August 11, 2021, the Defendant sold the Victorville Property. In response to Question 18 of the Statement of Financial Affairs, the Defendant stated that the net sale proceeds from the sale of the Victorville Property were $156,857.26. The Defendant further stated that $15,000 of the net sale proceeds were used for living expenses.

87. The Defendant's schedules and statements in the Underlying Case do not reflect a satisfactory explanation for the loss or deficiency of assets to meet the Defendant's liabilities.

88. The Defendant's discharge should be denied pursuant to 11 U.S.C. § 727(a)(5).

17

**WHEREFORE**, Plaintiff requests that the Court (i) deny Defendant's discharge and (ii) grant such other relief as it deems just and proper.

Executed in Sacramento, California on March 30, 2022.

    Respectfully submitted,

    TRACY HOPE DAVIS
    UNITED STATES TRUSTEE

    By: /s/ Jason Blumberg
    JASON BLUMBERG
    Attorney for the United States Trustee